**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

C. DAVID FORINASH; C. WAYNE
PIGOTT; MELVIN W. SWIGER; WILLIAM
GAYNOR; PAUL Z. BOWMAN, II;
ROGER F. FREDERICK; BERNARD R.
RIDDLE; RICHARD W. BARTLETT;
MARK MURPHY; HAROLD MCCRAY;
RAY L. SNYDER; EDDIE JONES; DAVID
HUNT; GARY CARR; ROBERT F. LOAR;
JEFFREY C. CUPPETT; DANNY PAUGH;
DAVID P. AKERS; LEROY DUMM, on
behalf of themselves and
approximately 500 additional "C"
Book Members of Local No. 132,

International Union of Operating
Engineers,
Plaintiffs-Appellants,                                No. 96-1275

v.

INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL NO. 132,
Defendant-Appellee,

and

INTERNATIONAL UNION OF OPERATING
ENGINEERS, AFL-CIO-CLC,
Defendant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Dennis Raymond Knapp, Senior District Judge.
(CA-94-1110)

Argued: October 28, 1996

Decided: August 16, 1999

Before WIDENER and ERVIN, Circuit Judges,
and BULLOCK, Chief United States District Judge
for the Middle District of North Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Harold Martin Sklar, MCNEER, HIGHLAND,
MCMUNN & VARNER, L.C., Clarksburg, West Virginia, for Appel-
lants. Lafe Compton Chafin, BARRETT, CHAFIN & LOWRY, Hun-
tington, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal presents issues regarding the internal procedures of the
International Union of Operating Engineers, Local No. 132. Nineteen
named plaintiffs brought suit on behalf of themselves and almost 500
additional C Branch members of Local 132 claiming the defendant,
Local 132, had violated their rights as protected under the Labor Man-
agement Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411.
The plaintiffs asserted that C Branch members were excluded from
running as candidates for the Local 132 Executive Board in violation
of the union constitution and bylaws as a result of a misrepresentation
by the Assistant Business Manager of Local 132. Additionally, plain-
tiffs asserted that the format of the ballot in a May, 1994 dues referen-
dum contravened their right under 29 U.S.C. § 411(a)(3)(A) to a vote

by union members as to dues increases. The district court found that it possessed jurisdiction to consider a violation of 29 U.S.C. § 411 and granted the defendant's motion for summary judgment. We affirm.*

Defendant Local 132 is a labor organization representing roughly 2,300 operating engineers and is constituted of five branches or books. The three branches relevant to this appeal are the C Branch, the B Branch and the Parent Body, whose respective memberships are roughly: C Branch, 475; B branch, 1,375; and Parent Body, 470. An RA Branch has 22 members and a 132D Branch has 2 members. Neither RA nor D Branches are involved here.

The parties do not dispute that the members of the smaller C Branch, employed by a single employer, earn on average significantly more than B Branch members, who engage in more varied and sporadic employment. Parent Body members are B Branch members who have requested the honorary status of Parent Body and for that have paid an additional initiation fee. They are treated the same in all respects as are B Branch members. The district court found that historically the Parent Body and B Branch members "have borne the financial burden of the defendant for years and that during prior

_____

*This case was tried on the theory pleaded by the plaintiffs and accepted by the defendants, that it was brought for a claimed violation of 29 U.S.C. § 411, which provides in pertinent part that an increase in union dues shall only be after a majority vote by secret ballot of the members in good standing. The urging of the plaintiffs to remove the Executive Board of Local 132 was in connection with that Executive Board making up the ballot without authority to do that or any like action because the plaintiffs, or some of them, had been told by the Assistant Business Manager of Local 132 that C Branch members could not hold office in the Local union. The principal object of the suit was to set aside the vote with respect to raising C Branch dues. The removal of the Executive Board was sought only in connection with the question of raising dues.

Had the object of the suit been to remove the officers, a persuasive argument might well have been made that, under the dictum in Furniture Moving Drivers v. Crowley, 467 U.S. 526 (1984), the court would have had no authority to proceed with the case at the instance of the plaintiffs, the Secretary of Labor being entrusted with that chore.

3

financial `hard times,' these two groups saw their assessments escalated." Plaintiff C Branch members counter that they do not use the hiring hall and facilities of the Local to the same extent as B Branch members, although both are open to them.

The record is clear that prior to the 1994 referendum at issue, the non-C Branch members paid dues that increased from $11 per month plus 1% of gross wages in 1981 to $12 and 5% in 1986. In that same period the dues of C branch members rose from $5 per month to $12.75. The Local claims that increase was solely due to the International's increase in the minimum per capita assessments.

Throughout the events at issue the constitution of the International Union of Operating Engineers and the bylaws of Local 132 governed the operation of the defendant's internal affairs. Despite the different assessments noted above, the district court found that all the members of the Local received equal treatment under the constitution of the International Union and the bylaws of the Local. Under the language of both documents the district court found no distinction between the branch members regarding members' right to vote on issues presented to the membership, their opportunity to nominate candidates, or their eligibility for union office.

The plaintiffs presented affidavits from approximately 13 members of the union that on or about April 24, 1994 Bruce Tarpley, the assistant business manager of the Local, informed them that C book members were unable to run for and hold office as members. Based on this the plaintiffs claimed "it has historically and consistently been the practice of Local 132 by and through the actions of its representatives and members of its Executive Board, to preclude C book members from seeking and holding office in the Executive Board." By affidavit Tarpley has denied making any such statement.

It is apparently agreed that prior to April 24, 1994, the Local's Executive Board called three special meetings to vote on proposals to increase the dues of C Branch members. Two of the three meetings involved the members of all the branches, while the third involved just C Branch members. At each the proposal was defeated.

In April of 1994 the Executive Board decided to conduct a secret-ballot mail referendum regarding the restructuring of union dues. The

4

referendum presented the single question for each member to cast a single vote for or against a proposal imposing both an increase in C Branch member dues and a net decrease in B Branch and Parent Body member dues. The referendum proposed restructuring the dues by raising the basic monthly dues from $12 to $13 dollars while decreasing the monthly percentage from 5% to 4% for non-C Branch members. Under the proposal C Branch members would experience an increase in dues from $12.75 to $20 and an assessment of 1% per month of gross wages, with the exception that C branch members earning less than $10 per hour would not be assessed the 1%. The referendum was mailed to all eligible members and subsequently passed with 801 members supporting it and 676 opposing.

Due to the single question of the ballot, C Branch members refused to pay the dues. The C Branch members apparently wrote and phoned the Local and International in an attempt to appeal the referendum within the union structure.

On both of the issues presented on appeal, that is to say the failure of the district court to remove the executive board from office because of the claim of C Branch members that they had been excluded from running for office, and the refusal of the district court to upset the vote on the restructuring of dues, we affirm the judgment of the district court for the reasons expressed in its written opinion. Underlying the decision of the district court is the following summary from its opinion, with which we agree:

> This Court believes that it is for the membership of the Defendant to determine the amount of dues they are to pay and the salary or wages of Defendant's representatives and employees. The Court in Gurton v. Arons, 339 F.2d 371, 58 LRRM 2080 (2d Cir. 1964) stated:
>
> The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions. Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the

5

members to manage those operations except in the very limited instances expressly provided by the Act. The conviction of some judges that they are better able to administer a union's affairs than the elected officials is wholly without foundation. Most unions are honestly and efficiently administered and are much more likely to continue to be so if they are free from officious intermeddling by the courts. General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations.

The Court finds that the proposal adopted by the executive board of the Defendant and the ballot utilized in May 1994 set forth a single issue involving dues restructuring. Further, there is no evidence that Defendant's members were mislead, confused or not fully informed of the dues restructuring as set forth on the ballot.

Plaintiffs have requested as relief the removal of the present executive board and a mandate for a new election to invalidate the dues votes of May, 1994. The Court denies Plaintiffs' request and hereby finds that as a matter of law, Plaintiffs' motion for summary judgment should be denied and Defendant Local's motion for summary judgment be granted. The Court further finds that the May referendum was valid and that Local 132 be left to handle its business and its internal operations as usual.

The judgment of the district court is accordingly

AFFIRMED.

6